**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MARIA BURUCA, *proceeding individually and on behalf of Salvador Buruca's estate*, | : : : | |
| Plaintiff, | : : | Civil Action No.:    10-1943 (RC) |
| v. | : : | Re Document No.:   24 |
| DISTRICT OF COLUMBIA *et al.*, | : : | |
| Defendants. | : | |

<u>**MEMORANDUM OPINION**</u>

**GRANTING THE DISTRICT OF COLUMBIA'S MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

This case stems from a shootout between officers employed by the Metropolitan Police Department and Salvador Buruca, who was killed in the melee.  His next of kin brought suit, alleging that the officers used excessive force.  Now before the court is the District of Columbia's motion to dismiss or, in the alternative, for summary judgment.  In support of its motion, the District has put forward a good deal of evidence, including testimony from one of the officers who was involved in the incident, audio recordings of contemporaneous witnesses, and expert testimony.  In response, the plaintiff submitted one single affidavit, which largely consists of inadmissible hearsay and statements made without personal knowledge.  Because no reasonable jury could find in the plaintiff's favor, the court will grant the District's motion.

**II.  FACTUAL AND PROCEDURAL HISTORY**

At approximately 3:46 a.m. on August 27, 2009, several individuals called 911 to report that a man was firing gunshots near a Shell gas station in Northeast Washington, D.C.  Def.'s Mot., Ex. 1.  One caller stated that the individual—later identified as Salvador Buruca—had fired shots into the air; another reported that Buruca had approached several cars and pointed his gun

at the drivers.  *Id.*, Exs. 2–3.  A Metropolitan Police Department ("MPD") officer, Curt Bonney, was only a few blocks away when he received the radio dispatch call.  *Id.*, Ex. 5 at 45.  When Officer Bonney arrived on the scene, he exited his cruiser and saw Buruca holding a gun.  *Id.* at 52.  Bonney ordered Buruca to drop the weapon, but Buruca instead raised his pistol and pointed it at the officer.  Bonney fired several shots at Buruca, who died from the wounds.  *Id.* at 58–59.  Later tests confirmed that Buruca's firearm, a .22 caliber Gerstenberger & Eberwein revolver, had been fired four times.  *Id.*, Ex. 9.  A toxicology report also revealed traces of PCP in Buruca's bloodstream.  *Id.*, Ex. 13.

Salvador Buruca's sister, Maria Buruca, filed suit individually and on behalf of her brother's estate.  Her complaint names the District of Columbia, the MPD, and several unknown "John Doe" MPD officers as defendants.  The complaint includes the following claims: Count I (42 U.S.C. § 1983 against John Doe police officers); Count II (42 U.S.C. § 1983 against the District of Columbia); Count III (assault, battery, negligence, and intentional infliction of emotional distress ("IIED")); Count IV (wrongful death under D.C. CODE § 16–2701); and Count V (Survival Act, D.C. CODE § 12–101).  The District now moves for summary judgment or dismissal on all counts.

### III.  ANALYSIS

#### A.  The Court Will Dismiss All Claims Brought Against the Metropolitan Police Department or the "John Doe" Officers

The District argues that Metropolitan Police Department is *non sui juris* and cannot be sued.  *See Hunt v. District of Columbia*, 2002 WL 199787, at *1 (D.C. Cir. Aug. 29, 2002) (per curiam); *Heenan v. Leo*, 525 F. Supp. 2d 110, 112 (D.D.C. 2007).  Second, the District asks the court to dismiss any claims brought against the "John Doe" defendants, because claims against fictitious defendants must be dismissed after the close of discovery.  *See Simmons v. District of*

*Columbia*, 750 F. Supp. 2d 43, 45 (D.D.C. 2011) (requiring the plaintiff to replace "John Doe"

defendants with real defendants after the completion of discovery). The District is correct, and

the plaintiff concedes as much by failing to oppose this portion of its motion.[1]

### B. Legal Standard for a Motion for Summary Judgment

Summary judgment may be granted when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

R. CIV. P. 56(a). A fact is "material" if it is capable of affecting the substantive outcome of the

litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if

sufficient evidence exists such that a reasonable jury could return a verdict for the non-moving

party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of

factually unsupported claims or defenses and determining whether there is a genuine need for

trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party bears the initial

responsibility of identifying those portions of the record which demonstrate the absence of any

---

[1]     The plaintiff never named Officer Bonney, the officer who shot and killed Salvador Buruca, as a
defendant in this suit. At the earliest stages of discovery, the plaintiff was made aware of
Bonney's identity and his role in this matter. *See* ECF No. 13, at 1 ("The Defendants identified
Officers Bonney and Jarboe as the involved officers in their initial disclosures on January 25,
2011."). Although the court ordered the plaintiff to amend her complaint or add any new parties
by April 2011, she never did so. And once the court enters a scheduling order, that schedule can
only be modified with the court's consent and with good cause shown. FED. R. CIV. P. 16(b)(4);
*Lurie v. Mid-Atl. Permanente Med. Grp., P.C.*, 589 F. Supp. 2d 21, 23 (D.D.C. 2008) (Lamberth,
C.J.). "To hold otherwise would . . . allow for parties to disregard scheduling orders, which
would undermine the court's ability to control its docket, disrupt the agreed-upon course of the
litigation, and reward the indolent and the cavalier." *Id.* at 23 (quotation omitted). To this day,
the plaintiff has made no effort to amend the complaint or to serve her complaint on Officer
Bonney. Accordingly, the court will construe the complaint as it is written. *See, e.g., Phelan v.
Cambell*, 2012 WL 407147, at *1–2 (N.D.N.Y. Feb. 8, 2012) (denying leave to amend after
discovery had closed when a plaintiff wished to replace several John Does with named police
officers in a § 1983 suit); *Smith v. Barber*, 316 F. Supp. 2d 992, 1030 (D. Kan. 2004) (same).

genuine issue of material fact. *Id.* at 323; FED. R. CIV. P. 56(c)(1)(A) (noting that the movant

may cite to "depositions, documents, electronically stored information, affidavits or declarations,

. . . admissions, interrogatory answers, or other materials"). In response, the non-moving party

must similarly designate specific facts in the record that reveal a genuine issue that is suitable for

trial. *Celotex*, 477 U.S. at 324.

On a motion for summary judgment, the court must "eschew making credibility

determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir.

2007), and all underlying facts and inferences must be analyzed in the light most favorable to the

non-moving party, *Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered

without any evidentiary support do not establish a genuine issue for trial. *Greene v. Dalton*, 164

F.3d 671, 675 (D.C. Cir. 1999).

### C. The Court Will Grant Summary Judgment on the Plaintiff's Common-Law Claims

"When an individual is shot by a District of Columbia police officer, and he or his

successors in interest decide to bring a lawsuit, they may proceed under one or more different

common law theories of legal liability." *Holder v. District of Columbia*, 700 A.2d 738, 741–42

(D.C. 1997). "For example, they may sue for the common law intentional torts of assault and

battery." *Id.*; *District of Columbia v. White*, 442 A.2d 159, 162–64 (D.C. 1982); *District of*

*Columbia v. Downs*, 357 A.2d 857, 859–60 (D.C. 1976). A plaintiff may also pursue a claim

under the theory of negligence. *See District of Columbia v. Evans*, 644 A.2d 1008, 1019–21

(D.C. 1994); *Etheredge v. District of Columbia*, 635 A.2d 908, 917–18 (D.C. 1993). A plaintiff

may also claim that an officer's conduct constituted IIED. *See McKnight v. District of*

*Columbia*, 412 F. Supp. 2d 127, 136 (D.D.C. 2006). In all cases, the District is vicariously liable

for the intentional and negligent acts of officers acting within the scope of their employment.

*See White*, 442 A.2d at 162 n.7 (citing *Davis*, 386 A.2d at 1202).

### i. Assault & Battery

An assault is "an intentional and unlawful attempt or threat, either by words or by acts, to do physical harm to the victim." *Rawlings*, 820 F. Supp. 2d at 107 (quoting *Evans–Reid*, 930 A.2d at 937).  A battery is "an intentional act that causes a harmful or offensive bodily contact." *Id.*  For either claim, the plaintiff's *prima facie* case is readily demonstrated by the officer's intentional act of force.  The defendant's liability turns on a separate question, however: whether the use of force was privileged.  *Rawlings*, 820 F. Supp. 2d at 820.  As the D.C. Court of Appeals has explained:

> A police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary.  Moreover, any person, including an officer, is justified in using reasonable force to repel an actual assault, or if he reasonably believes he is in danger of bodily harm.  Use of "deadly force," however, is lawful only if the user actually and reasonably believes, at the time such force is used, that he or she (or a third person) is in imminent peril of death or serious bodily harm.

*Etheredge*, 635 A.2d at 916.  The officer's judgment should be reviewed "from the perspective of a reasonable officer on the scene, with allowance for the officer's need to make quick decisions under potentially dangerous circumstances." *Rogala v. District of Columbia*, 161 F.3d 44, 57 (D.C. Cir. 1998).

It is unclear which party bears the burden of proving that the officer's use of force was privileged.  This fact complicates the analysis somewhat.  Ordinarily, a defendant who seeks summary judgment in a "run-of-the-mill civil case" can succeed simply by showing that the plaintiff lacks sufficient evidence to prove some portion of her *prima facie* claim.  *Celotex*, 477 U.S. at 324.  But "the inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252.

The D.C. Court of Appeals has "specifically left open the question of who bears the burden on the privilege issue" in excessive force cases. *See Kotsch v. District of Columbia*, 924 A.2d 1040, 1047–50 (D.C. 2007); *District of Columbia v. Chinn*, 839 A.2d 701, 706 n.3 (D.C. 2003). Thus, the District must overcome this uncertainty by showing that it would be entitled to summary judgment even if it was saddled with the burden of proof. *See Evans-Reid v. District of Columbia*, 930 A.2d 930, 939 (D.C. 2007) ("We will assume, without deciding, that where a plaintiff establishes a prima facie case of assault and battery and the officer invokes the qualified privilege as an affirmative defense, the officer bears the burdens of production and persuasion."). Thus, summary judgment is warranted here only if it is undisputed that Officer Bonney "actually and reasonably believe[d]" that he was in "imminent peril of death or serious bodily harm." *See Etheredge*, 635 A.2d at 916.

The District has submitted enough evidence to satisfy its (presumed) burden. Officer Bonney's testimony establishes that he received a dispatch call indicating that an armed man was firing gunshots in the vicinity. Def.'s Mot., Ex. 5 at 45. When Officer Bonney arrived on the scene, he saw a firearm in Salvador Buruca's hand. *Id.* at 52. Bonney ordered Buruca to drop the weapon, but Buruca instead raised his gun and aimed it at the officer. *Id.* at 54-55. Only then did Bonney fire his weapon. *Id.* The District has submitted expert testimony indicating that Buruca was close enough to inflict lethal harm on Bonney. Def.'s Mot., Ex. 14 at 9. In addition, the District has submitted corroborative evidence in the form of contemporaneous 911 calls indicating that Buruca was firing gunshots in front of the Shell station, *id.*, Ex. 2,[2] and forensic evidence revealing that Buruca had fired his revolver, *id.*, Ex. 9. It is clear that a police officer

---

[2]     The audio from these 911 calls would likely fall under one of two exceptions to the rule against hearsay: Rule 803(1)'s exception for "present sense impressions" or Rule 803(2)'s exception for "excited utterances." *United States v. Morrow*, 2005 WL 3163803, at *3 (D.D.C. June 9, 2005).

facing the barrel of a gun has reason to believe that he is in imminent peril. *Evans-Reid v. District of Columbia*, 930 A.2d 930, 937 (D.C. 2007). Under such circumstances, it appears that Officer Bonney's use of force was privileged and cannot give rise to liability. *Id.*

The plaintiff can defeat the District's motion only if it points to "particular facts" supported by "materials in the record" to dispute the District's version of the story. FED. R. CIV. P. 56(c)(1)(A). But the plaintiff has not done so. Far from it; the plaintiff only offers her own affidavit, which suffers from serious infirmities.[3] The District points out two reasons why the statements contained in the plaintiff's affidavit could never be submitted to a jury.[4] The District argues that the affidavit contains statements made without personal knowledge. The plaintiff essentially admits as much: "while I was not present at the time, I have communicated with Paul Christmas who informed me that he was an eyewitness to the shooting." Pl.'s Opp'n, Ex. 1 ¶ 3. Of course, statements that are not based on the witness's perception are inadmissible. FED. R. EVID. 701(a). In addition, the affidavit contains hearsay: "based upon my conversations with Paul Christmas, Mr. Christmas will testify that he observed Officer Bonney drive his police cruiser and stopped it along the far entrance of the Shell/Enterprise; that the Officer then exited his vehicle, ran around to the passenger side and immediately began shooting at my brother who was walking to exit the parking lot. Mr. Christmas has told me that he had a clear unobstructed view at all times; that the Police Officer gave no verbal warnings to my brother; that my brother

---

[3] Recognizing as much, the District filed a motion to strike, *see* ECF No. 27, and the plaintiff has not filed any response. For this reason alone, the court would be fully justified in striking the affidavit without discussion. Because the affidavit constitutes the sum of the plaintiff's evidentiary showing, however, the court will take care to scrutinize its contents.

[4] . The District also argues that the affidavit suffers from a technical flaw: namely, that the affidavit was signed electronically instead of manually. Even if this violated Local Civil Rule 5.1(h) or 28 U.S.C. § 1746, this glitch could easily be remedied by ordering the plaintiff to re-submit the affidavits with a manual signature. *Magyar v. Saint Joseph Regional Med. Ctr.*, 544 F.3d 766, 770 (7th Cir. 2008). Accordingly, the court chooses not to set aside the affidavit on this basis.

was walking with both of his arms down by his side; that my brother was posing no threat to the police officer when he was shot by Officer Bonney."  Pl.'s Opp'n, Ex. 1 ¶ 5; *see id.* ¶ 8 ("Mr. Paul Christmas has stated that it was a "cold blooded" killing and that Mr. Buruca took no actions which would have placed the officer in fear for his safety.").  Of course, an affidavit containing hearsay cannot create a triable issue of fact.  *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998).

The affidavit also refers to certain video recordings taken by security cameras near the scene of the shooting.  Pl.'s Opp'n, Ex. 1 ¶ 6.  For reasons that remain unclear, neither party submitted the footage as evidence.  The plaintiff nevertheless sees fit to describe the video's contents in a light that is decidedly charitable to her case.  The court sees no reason why the plaintiff should be allowed to do so.  In all likelihood, her testimony would contravene the "best evidence" rule, which requires the plaintiff to prove the contents of a video recording by submitting the recording itself.  FED. R. EVID. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise.").  "The elementary wisdom of the best evidence rule rests on the fact that the [recording itself] is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description [of it]."  *Gordon v. United States*, 344 U.S. 414, 420 (1953).  "Thus, the rule is a mechanism to prevent fraud or mistransmission of information, *i.e.*, to ensure accuracy."  *United States v. Holton*, 116 F.3d 1536, 1545 (D.C. Cir. 1997).  Because the plaintiff does not allege that the video footage is unavailable, the plaintiff may prove the videos' content only by submitting the actual recordings.  Her characterization of these videos' contents is therefore inadmissible.  *See Freeman v. City of Fort Worth, Texas*, 2011 WL 2669111, at *3 (N.D. Tex. July 7, 2011) (deeming an affidavit inadmissible when it sought to

describe the contents of a video that was otherwise available); *Molodecki v. Robertson Display, Inc.*, 2002 WL 34421226, at *3 (M.D. Fla. Sept. 10, 2002) (striking the plaintiff's affidavit because it described the contents of an available recording). Even if the best evidence rule did not apply, the court sees no independent reason to allow the plaintiff to narrate the videos' content. The plaintiff does not purport to be an expert, whose testimony could be based on the video footage. FED. R. EVID. 703. Nor does the plaintiff claim that she has some unique knowledge that would be helpful to the jury's understanding of the video.[5] *See* FED. R. EVID. 701(b) (requiring testimony to be "helpful to clearly understanding . . . a fact in issue"). Although the plaintiff could have cross-examined the District's expert witness or submitted her own expert testimony on this topic, she pursued neither option. In sum, the court concludes that no reasonable jury could rely on the plaintiff's characterization of the videos' contents.[6]

Aside from her affidavit, the plaintiff has submitted no other evidence. She nevertheless avers that favorable testimony will be produced at trial. Pl.'s Opp'n at 5 ("Paul Christmas, who observed this incident, will testify that plaintiff's decedent was walking with his arms down by his side when he was shot by Officer Bonney. He gave this same account to Fox 5 news when he was interviewed by a reporter at the Shell gas station and told the reporter this was a 'Cold Blooded' killing."). The plaintiff's failure to obtain or submit Mr. Christmas's testimony is puzzling. The plaintiff named Paul Christmas in her initial disclosures. *See* ECF No. 8, at 1

---

[5]　　For example, the plaintiff's testimony might be "helpful" if there was some difficulty identifying the individual in the video. As the plaintiff's next of kin, the plaintiff would be in a better position than the jury to identify the deceased. *See United States v. Contreras*, 536 F.3d 1167, 1171 (10th Cir. 2008).

[6]　　The plaintiff also argues that in viewing the surveillance videos, she did not hear Officer Bonney give any verbal warnings. Pl.'s Opp'n, Ex. 1, ¶ 6. The District argues this is because the videos contain no accompanying audio. Def.'s Reply at 8. Because neither party has submitted the videos into evidence, the court cannot weigh in on the matter.

(listing Paul Christmas as an individual who witnessed the shooting in the plaintiff's  Rule

26(a)(1)(A)(i) disclosures).  In addition, the plaintiff had ample time to secure an affidavit from

Mr. Christmas, or to obtain a subpoena and depose him.  In fact, the plaintiff has received several

generous extensions of time to conduct discovery—over the District's repeated objections.

Accordingly, it is not clear why the plaintiff could not obtain a statement from Mr. Christmas.  If

such testimony existed, it might suffice to defeat the District's motion.  But the *promise* of such

testimony cannot create a genuine factual dispute.  *See E. P. Hinkel & Co. v. Manhattan Co.*, 506

F.2d 201, 205 (D.C. Cir. 1974) ("Summary Judgment cannot be defeated by the vague hope that

something may turn up at trial.").

Similarly, the plaintiff promises that Douglas Brown—one of the 911 callers—might

testify in support of her claim.  Pl.'s Opp'n at 4.  But again, the plaintiff has submitted no

evidence on this score.  The plaintiff does make one argument worth examining: in his 911 call,

Douglas Brown narrates several events to the dispatcher.  He states, "here comes the police,"

"now he's going back to the SUV," and then gunshots are heard.  Def.'s Mot., Ex. 1 (audio), *id.*,

Ex. 2 (providing a summary).[7]  The plaintiff correctly notes that Douglas Brown "never

mentioned that Mr. Buruca pointed a weapon at Officer Bonney."  Pl.'s Opp'n at 4.  But this

observation neither confirms nor contradicts the District's proof.  Perhaps a genuine factual

dispute would exist if the plaintiff had submitted testimony in which Mr. Brown actually

disputed the District's account of the events.  But the plaintiff's failure to submit any evidence

leaves very little for the court to work with.  To defeat summary judgment, the plaintiff "must do

---

[7]     The District submitted a police report of an interview with Mr. Brown, who stated that he heard
        the police give "verbal commands, but [he] could not make out the words."  Def.'s Mot, Ex. 3, at
        2.  But these statements are probably hearsay, and it forms no part of this court's consideration.
        *See United States v. Wilkerson*, 656 F. Supp. 2d 22, 37 (D.D.C. 2009) (noting that a witness'
        statement in a police report is "classic hearsay: an out-of-court statement offered for the truth of
        the matter asserted").

more than simply show that there is some metaphysical doubt as to the material facts."
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  And "[i]f the
evidence is merely colorable, or is not sufficiently probative, summary judgment may be
granted."  *Anderson*, 477 U.S. at 249–50.  Accordingly, the court concludes that no reasonable
jury could find in favor of the plaintiff on the basis of this inference alone.

     In sum, the District's evidence amply demonstrates that Officer Bonney "actually and
reasonably believe[d]" that he was in "imminent peril of death or serious bodily harm."  Thus,
his use of force was privileged.  *See Etheredge*, 635 A.2d at 916.  Because the plaintiff has
submitted no probative evidence to the contrary, the court will enter summary judgment on the
plaintiff's assault and battery claims.

### ii.  Negligence

     Because the plaintiff's negligence claim is functionally identical to her assault and battery
claim, it is questionable whether or not her negligence claim can proceed.  In an excessive force
case, a plaintiff who simultaneously asserts claims of assault and battery as well as negligence
can only pursue the latter claim if it is: (1) "distinctly pled"; (2) "based upon at least one factual
scenario that presents an aspect of negligence apart from the use of excessive force itself"; and
(3) "violative of a distinct standard of care."  *District of Columbia v. Chinn*, 839 A.2d 701, 711
(D.C. 2003); *Dormu v. District of Columbia*, 795 F. Supp. 2d 7, 30 (D.D.C. 2011).  Here, it is
doubtful that any of these criteria are met; Count III simply states that "the acts and conduct of
the Defendants alleged herein constitute assault and battery, intentional infliction of emotional
distress, outrageous conduct and negligence under the laws of the District of Columbia."  Compl.
¶ 24.

     In any event, the plaintiff's negligence claim is not viable.  "The plaintiff in a negligence
action bears the burden of proof on three issues: the applicable standard of care, a deviation from

that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury." *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988) (citations and internal quotation marks omitted).  Plaintiffs bringing these types of cases must submit expert testimony. *Etheredge*, 635 A.2d at 913 ("The applicable standard of care in [excessive force cases] is 'beyond the ken' of the average lay juror, and expert testimony is therefore required.").  Here, the plaintiff's failure to introduce expert testimony is fatal to her claim.  *Smith v. District of Columbia*, 882 A.2d 778, 793 (D.C. 2005) (finding directed verdict on excessive force claim warranted where the plaintiff failed to introduce expert testimony as to the applicable standard of care).  In addition, the plaintiff has submitted no other evidence to suggest that Officer Bonney acted negligently.  The court will enter summary judgment for the District on the plaintiff's negligence claim.

### iii.  IIED

The plaintiff also alleges that the District of Columbia is liable under the common law tort of IIED.  Under District of Columbia law, a plaintiff seeking relief for IIED must show: (1) extreme or outrageous conduct on the part of the defendant that (2) either intentionally or recklessly (3) caused plaintiff severe emotional distress. *Pitt v. District of Columbia*, 491 F.3d 494, 505–06 (D.C. Cir. 2007).  The plaintiff's allegations, if assumed true, might fit within the contours of a *prima facie* claim for IIED.  *See McKnight v. District of Columbia*, 412 F. Supp. 2d 127, 136 (D.D.C. 2006).  But this case has progressed past the pleading stage, where the veracity of the plaintiff's allegations is presumed.  At the summary judgment stage, the court must pierce the pleadings and determine whether the plaintiff's claims are backed by evidence.  *See E. P. Hinkel & Co.*, 506 F.2d at 205.  Because plaintiff has submitted no evidence, summary judgment must be entered on this claim as well.

**D.  The Court Will Grant Summary Judgment for the District on the Plaintiff's § 1983 Suit Against the District of Columbia**

Finally, the District asks the court to dismiss any portion of the plaintiff's § 1983 claim that is based on the Fifth Amendment, the Sixth Amendment, the Eighth Amendment, the Ninth Amendment, or the Fourteenth Amendment; the plaintiff does not oppose the District's request. Pl.'s Opp'n at 7 ("Plaintiff would concur with defendant's [sic] that the additional constitutional claims based upon the facts as they have presented themselves in discovery would no longer be viable against the defendants.").  Remaining, therefore, is the plaintiff's Fourth Amendment § 1983 claim against the District.

A municipality, such as the District,[8] may be held liable under § 1983 for the acts of its employees only if the plaintiff can show that: (1) he was deprived of a constitutional right; and (2) such deprivation was the result of a government policy or custom.  *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–94 (1978).

The plaintiff alleges that Officer Bonney's acts violated the Fourth Amendment. Excessive force claims are analyzed under the Fourth Amendment's "objective reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989) (explaining that the use of deadly force constitutes a "seizure" under the Fourth Amendment).  When determining whether an officer's use of force was objectively unreasonable, the court must balance the individual's Fourth Amendment interests against the countervailing governmental interests at stake.  *Id.* at 396.  The

---

[8]     Although not originally subject to suits under § 1983, *see District of Columbia v. Carter*, 409 U.S. 418, 432 (1973), the District of Columbia was brought within § 1983's ambit in 1979.  *See* Pub. L. No. 96–170, 93 Stat. 1284 (1979).  As a municipal corporation, the District is a "person" within the meaning of the statute and is therefore subject to liability "when an official policy or custom causes [a] complainant to suffer a deprivation of constitutional right."  *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986).

court's inquiry thus "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The court must also remain mindful of the fact that officers are called upon to make split-second decisions in potentially dangerous circumstances, and the court must do its best to review the acts from the officer's perspective without resorting to the benefit of hindsight. *Id.* at 392–94, 396–97.

As explained above, the District has submitted evidence to suggest that Officer Bonney's use of force was reasonable under the circumstances. Bonney testified that he received a dispatch call indicating that an armed man was firing gunshots nearby. Def.'s Mot., Ex. 5 at 45. When Bonney arrived on the scene, he saw a gun in Buruca's hand. *Id.* at 52–55. When Bonney ordered Buruca to drop the weapon, Buruca pointed his revolver at the officer. *Id.* at 54–55. If the District's version of events is to be credited, Officer Bonney's use of force was reasonable.[9] A police officer may use deadly force when he reasonably believes there is an imminent threat of serious bodily harm or death to himself or others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "Thus, if the suspect threatens the officer with a weapon . . . deadly force may be used . . . ." *Id.*; *see Wallace v. District of Columbia*, 685 F. Supp. 2d 104, 110 (D.D.C. 2010) (concluding that two officers' use of deadly force was reasonable when the officers faced an armed individual who put his gun to his head, then moved his hand towards one of the officers); *White v. United States*, 2012 WL 1979240, at *6 (D.D.C. June 4, 2012) (concluding that officers' use of deadly force was reasonable when an individual pointed his gun at one of the officers). In response, the

---

[9]     This inquiry is similar to the analysis undertaken when determining whether a police officer's assault and battery was privileged. *Rogala*, 161 F.3d at 57 (citing *Etheredge*, 635 A.2d at 915 n.10).

plaintiff submits no lay testimony, expert testimony, affidavits, declarations, or physical evidence to refute the District's account.[10]  Accordingly, it appears uncontroverted that Officer Bonney's acts did not violate the Fourth Amendment.

In any event, the plaintiff concedes that there is no evidence linking the deceased's injury to any municipal policy or custom.  Pl.'s Opp'n at 7 ("Plaintiff acknowledges that she has not received any discovery information from the defendant from which to argue that the District of Columbia in this case violated there[sic] own custom or policy.").  If there is no municipal policy or custom at the root of the plaintiff's injury, the District cannot be held liable under § 1983. The court will therefore grant the District's motion for summary judgment on Count II.

### E.  The Court Will Dismiss Counts IV and V

The District also moves to dismiss Counts IV (Wrongful Death) and V (Survival Act). The District argues that the Wrongful Death Act, D.C. CODE § 16–2701, and the Survival Act, D.C. CODE § 12–101, do not provide any independent causes of action.  Again, the District is correct.  D.C.'s Wrongful Death Act allows Maria Buruca to sue for any damages *she* suffered due to the loss of her brother.  *Nelson v. Am. Nat. Red Cross*, 26 F.3d 193, 198 (D.C. Cir. 1994). D.C.'s Survival Act allows Maria Buruca to act as her brother's legal representative and sue for damages *he* may have sustained.  *Runyon v. District of Columbia*, 463 F.2d 1319, 1321 (D.C. Cir. 1972).  But neither statute provides any substantive rights; they simply establish the procedural methods for filing suit.  *Id.*  Accordingly, Counts IV and V must be dismissed. *Wallace v. District of Columbia*, 685 F. Supp. 2d 104, 112–13 (D.D.C. 2010).

---

[10]      The plaintiff's failure to submit any relevant evidence is explained in section III.C.i, *supra*.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the District's motion for summary judgment.

An order consistent with this memorandum opinion is separately issued this 6th day of

November, 2012.

RUDOLPH CONTRERAS
United States District Judge